We'll hear argument first this morning in Case 13-896, Commeril USA v. Cisco Systems. Mr. Wardman? Mr. Chief Justice, and may it please the Court, this case concerns whether an infringer who bypasses myriad means of adjudicating patent validity and who then actively induces infringement can escape responsibility simply by claiming that they believe the patent was invalid? We're not claiming, but by proving. Well, they would have to prove that, Your Honor, but we submit that the presumption of validity, especially because of that, it would be wrong to allow the infringer to escape liability in those instances. If there's a mistake, it should be borne by the infringer who made the mistake. You mentioned the presumption of validity. What percentage of patents that are challenged are found to be valid? Well, Your Honor, from the briefing, it appears a high number. Forty percent was an estimate. I don't know how. Forty percent of the patents are found to be valid? Invalid. Invalid. Invalid. So only 60 percent are upheld. That's not much of a presumption of validity. Mr. Chief Justice, I would submit that it would be for Congress to change the presumption of validity if it's out of line. The presumption has been part of patent law for several hundred years, even before the codification in 1952, and it's more than just a procedural mechanism. It's a message that patents are presumed valid. They should be respected not just by judges and juries, but by the public, who are told that until proven otherwise, patents are presumed valid. And someone who wishes to gamble on their belief that it's invalid should bear the consequences if they're wrong. This question would come up only if the patent had been held valid, right? And the defense is, although the patent is valid, we had a good faith belief that it was invalid. That's right, Justice Ginsburg. It would basically give the accused infringer a second bite at the apple, because they would have to have the patent found valid, and then if that went against them, then they would want a second chance to say, even though they were mistaken, they believed that it was invalid. And we think that giving them that second bite at the apple will eviscerate the effectiveness of Section 271B, which is vital to protect the interest of patent owners. And the Court below believed that there was no good faith basis to distinguish a good faith belief in lack of infringement from a good faith belief in invalidity. How do you address that difference? Justice Sotomayor, Or is there one, and why? There is a substantial difference, Your Honor, because we can see that validity and infringement are different. I'd like to start with the statutory basis that makes that clear. 271B says that whoever shall actively induce infringement shall be liable as an infringer. It speaks not at all to validity. Validity is in a completely separate section of the Patent Act, Section 271B. But it's a type of aiding and abetting liability, and both in tort law and in criminal law. At the common law, it was clear that you're not liable as an aider and abetter unless you have a wrongful intent. If, indeed, you're – and you acknowledge that part of this depends upon wrongful intent, don't you? You say that it can't hinge upon the belief that the patent is invalid, but do you not acknowledge that you have to – you have to believe that you are inducing infringement of the invalid patent? Well, indeed, Justice Scalia – Where do you get that requirement from? Well, indeed, Justice Scalia, those are two separate. And I acknowledge that, as the Court said in the global tech matter, that some intent is required, and that was found from the words actively induce in Section 271B. Well, why just some intent? What good does it do to say, well, you know, you're really not a bad actor, but you're – you know, you're half a bad actor. That's enough. It seems to me that if you don't know that you're infringing or that you're encouraging somebody to infringe, is no worse than you're not knowing that the patent is valid. Well, under the Court's Arrow 2 case that the Court described in global techs as a fixture of patent law, the Court specifically there recognized that once an accused infringer receives actual notice of the patent and has put on notice of the infringing conduct, that that creates no defense to that person. And I think the policy reason for that is that having actual knowledge of the patent goes a very long way in putting the person who then goes forward with knowledge of the patent, different than in global tech, and they infringe and they were on notice, they should be the ones, if I might say, who should have stopped when they had that notice, Your Honor, and gone to the myriad means of adjudicating patent validity. Now, under the America Invents Act, for example, there are streamlined procedures available. So the wrongdoing arises when someone who has actual knowledge of the patent and is on notice from the patent owner of infringement, if they don't go to the streamlined procedures, and they can do a declaratory judgment, they can do the IPR, the Interparties Review at the Patent Office, then they are gambling on their belief. And as between the patent owner and the accused who was on notice, it's wrong if the infringer with that chooses not to pursue those actions. Scalia, Well, you have a cause of action against the person who infringes, right? And it doesn't matter whether he thinks the patent is invalid or not. You've got that person, don't you? So this is sort of a supplemental cause of action against somebody who induces, who aids and abets. Yes, Your Honor, that's true. And the 271A, the direct infringer, has strict liability. But I submit that when we look at 271B and C, there shouldn't be this yawning gap between the aider and abetter and the direct infringer. There should be more required. Scalia, But there is a common law. I mean, there was a common law, both civil and criminal.  And it was a law that you took to convict the person who committed the tort or committed the crime. Justice Scalia, it's true, but if we look at the restatement dealing with aiding and abetting, we see that it depends. There are several provisions that deal with aider and abetter. And the one that has the word induce in it requires a much lower scienter and intent than the one who is assisting. And that makes sense. If I could point out one other statutory aspect, and I'm referring to what was — what is footnote 6 on page 22 of the government's brief, there's an example there of three statutes that are very powerful in telling us what was meant by Congress in 271B. Footnote 6 on page 22. The first, when we try to discern the textual meaning of 271B, we need go no further than 271E5, that very same section. And there, at the very end of that section, it talks about the courts of the United States shall have subject matter jurisdiction for declaratory judgment that such patent — this is the brand name patent — is invalid or not infringed. And I'll give two more examples where we see where Congress knows the difference between invalidity and infringement. Where Congress is addressing both, it says both. And that was the first of three examples. Kagan. Kagan. Mr. Werner, suppose I have a product and I'm trying to figure out whether, if I sell this product, I'll have liability. And there are two ways to construe a statute — construe a patent. One is narrow and one is broad. And if the patent is construed narrowly, I won't be infringing it. But if the patent is construed broadly, it's not valid, right? So I have two possible defenses depending on whether the patent is construed narrowly or the patent is construed broadly. Now, Global Tech says that I have a good-faith defense as to non-infringement. But you're suggesting I don't have that good-faith defense as to invalidity. And I guess I don't understand quite why that would make sense in the context I'm talking about, which I think is a pretty typical context. But it would seem that the two defenses are so intertwined and so two sides of the same coin that they should be treated in the same way. Justice Kagan, I understand the question, and one of the judges in the Court below said in dissent, they're not two sides of the same coin, they're actually two separate coins. And I see the — where the issue arises in claim construction. But every party to patent litigation is uncertain about claim construction, plaintiff and defendant. And until a Markman hearing is had, no party knows for sure how the claim will be construed. That's just inherent in patent litigation. If the person makes a judgment, as they have to, about what the claim constructions are and they think the patent doesn't infringe, then they are in a different situation if they have a question about validity. And they have options. Contrary to what my opponent says, there are options at that point. If the person is not certain about claim construction as to whether there will be validity or not, they can do an IPR before the Patent Office, a new procedure that was part of the American Invents Act, which can be resolved in 18 months and often stay the litigation. They can go for declaratory judgment. So my answer would be that regardless of what leads them to their confusion, if they assume the risk by proceeding, then if it turns out they're wrong, they should bear the risk as between patent and not patent. Scalia. You could say the same thing about whether they were infringing or not. They could bring a declaratory judgment action as to whether they're infringing or not. And therefore, they don't have to gamble that they're not infringing. They can get a declaratory judgment. So, you know, put the burden on them. Why do you do it for the one and not for the other? That's what I don't understand. Well, Your Honor, I would say that with respect to beliefs and invalidity, it's deeply ingrained in American law that there is a difference. And, for example, in the Cheek v. United States case, that distinction is made very clear. That's in the context of a criminal statute where the accused for tax evasion, raising all sorts of mistakes of law and the like, this Court held in that Chief decision that one accused of violating a prohibition will not be heard to say they thought the prohibition was invalid or unconstitutional. But that really does get back to the Chief Justice's opening question, because you're quite right in your reply brief when you say that this is a tradition in American law, that we assume that statutes are constitutional, that we assume that contracts are valid. That's right, but it's because they really are. You know, almost all statutes are constitutional. And here we're in a different universe entirely, aren't we, where, you know, you could flip a coin as to whether a patent is valid or invalid and be pretty close, right? It's about 50-50. Well, the Congress has said that there should be a presumption of validity, and that's been the law. And in the Court's opinion in I-4-I, quoting Justice Cardozo about the force of the presumption, and Judge Rich, who explained the basis when the government acts to presume that it did so properly, so maybe there is some step. But that's what I mean to say, a gap between the current presumption and certain practices. Is that a historical development? Did more of them used to be valid? Is that a historical development?  Is that a historical development? Has that been understood, however many decades ago, and it's sort of changed recently? I think more recently, there is more of an issue. I'm not certain, Mr. Chief Justice, how the statistics were further back. But I do know that Congress has responded very recently, and the PTO is responding to the various issues. And that should be the mechanism, congressional action and PTO action, and not prejudice patent owners who have not done anything wrong, who have gained their patent. And, of course, in this case, it is a valid patent, and Cisco not only was found to be infringing a valid patent, they went to the PTO to reexam this patent, and it was found to be valid. But the whole point of global tech was inquiry was encouraged. And it seems to me that there's not a parallel or a symmetry between what you're arguing and what global tech said. Global tech said, we want you to inquire. You say, once you get a notice, and I'm sure these letters just come all the time, they're form letters, that that's it. Justice Kennedy, I don't think that it would be sufficient to be a form letter. I know that the Respondent has raised questions about that, but I don't submit that it can just be a form letter or inadequate. But I want to make my point clear as a matter of global tech and infringement, because that's really different from the validity. There I think it would be helpful if the Court could clarify in global tech, it was dealing with a situation where there wasn't knowledge of the patent. So I think some of the statements there might, in the context of not knowing of the patent and willful blindness, be different. I think arrow two, where there was knowledge of the patent and this Court held very clearly that there would be no defense available once this person received the notice in the patent, I think that should guide the Court in the cases where there is knowledge of the patent. If I may reserve the rest of my time. Roberts. Thank you, counsel. Thank you. Ms. Anders. Mr. Chief Justice, and may it please the Court, neither a good-faith belief in non-infringement nor a good-faith belief in invalidity should preclude liability for inducing enforcement. Are you asking us to overturn global tech? No. And arrow? No. We don't think that the Court should overturn global tech. We think that global tech is really the law of these issues. If you think that infringement of global tech does mean that you have to have knowledge of the patent and knowledge that your activity infringes it, then your argument doesn't hold up? If that's how the Court understands global tech, then we would say, like Petitioner, that even if you think that knowledge of the infringing nature of the act is necessary, knowledge of invalidity is not also necessary. So break up your argument, if you would, for me, addressing both presumptions, because I think those are different arguments. Well, so we think that if you look at global tech, it doesn't clearly resolve the issue about whether knowledge of infringement, knowledge of the infringing nature of the acts is necessary. There's language in the opinion that states that knowledge of the patent would be sufficient to satisfy knowledge of the infringement. The Court also did not have to resolve the question about whether a good-faith belief in non-infringement would be necessary, because that was not presented in global tech. The defendant there had no argument that even if he knew about the patent. Sotomayor's argument there was that he didn't know that someone replacing a top infringed. If you're honest, it's tabular, too. In that case, what the Court said was that you need knowledge that the use is infringing, and the Court held that that knowledge was conclusively satisfied by the defendant's knowledge of the patent and knowledge of the link between the patent and the conduct. I think there was no plausible argument there that the defendant had a good-faith belief or, I'm sorry, that the defendant lacked a good-faith belief that his conduct was not infringing. The question of whether direct infringement was occurring was hotly contested. It was litigated all the way up to the Supreme Court and back, and it closely divided the justices 5-4. So I think anyone would say that in that case, the defendant had a good-faith belief in non-infringement. Now, if I could just address why it makes sense, I think, to read global tech and arrow this way and to not require knowledge of the infringement.  Kagan I will not do that, Ms. Anders. I mean, it just does seem, whatever the factual circumstances of that case were, we could not have been more clear about the breadth of the holding. I mean, we just say, we now hold that induced infringement under 271b requires knowledge that the induced acts constitute patent infringement. And your brief essentially puts a knot in that sentence. Anders With respect, Justice Kagan, I don't think that's so. I think the sentence that immediately preceded the sentence that Your Honor just read said that it would be strange to hold that knowledge of the patent is needed under 271c, but not 271b. Accordingly, we now hold that knowledge that the induced acts constitute patent infringement is necessary. So I think that the Court may have equated the two things. But just to go back to why I think it would make sense to read the two things. Scalia I don't understand what you just said.  Anders With respect, Justice Kagan, I don't think that the sentence that preceded the sentence that Your Honor just read said that it would be strange to hold that knowledge of the patent is needed under 271c, but not 271b. Scalia Are we that dumb that we would say those two things in successive sentences? Anders With respect, Justice Kagan, I don't think that the sentence that preceded the sentence that Your Honor just read said that it would be strange to hold that knowledge of the patent is necessary under 271c, but not 271b. And the Court said the defendant has no defense that he lacked knowledge of infringement when he possessed knowledge of the patent and knowledge of the accusation of infringement. So I think that's where this language comes from. But again, just to address both why this makes sense and why I think it makes sense to say that a good-faith belief in invalidity is not a defense, even though 40 percent of patents may be invalid. Ginsburg I hope you'll spend and concentrate on that, because that's the crux of this case, and that's what the Federal Circuit majority says, that there's no principal difference between the two. And if you could make sure that you – if you think there is a principal difference, tell us what it is. Anders With respect, Justice Ginsburg, I'll address that. First, I'd like to say that I think a key point here is that if the inducer is right that the patent is invalid or that it's not infringed, he will not be liable, because the Court will find that the patent was invalid or not infringed. And so in that case, you don't have to worry about liability. So the question is really what should happen when the defendant is wrong, right? Who should bear the risk of the defendant's being wrong that the patent is invalid or not infringed? And we think the inducer should bear the burden. This is someone who knows about the patent, who has considered it, who has decided not to challenge – not to use the statutory mechanisms that Congress has provided to challenge the patent. Scalia. The patentee has a cause of action against the person who violates the patent, right? You're just talking about supplemental liability for somebody who induced that violation. And generally for that kind of liability, we have required mens rea. We have required knowledge that you're doing something wrong. Two points with respect to that. The first point is that certainly in the criminal law, you may need wrongful intent when you're an aider and abetter, but you do not need knowledge that the principal offense is illegal. So, for instance, if you're aiding and abetting a felon to possess a gun, you need to know that you're selling them a gun and that they're a felon. You don't need to know that it's illegal for the – for a felon to possess a gun. So we think that's analogous here. The second point I would make is that 271B is not simply supplemental liability. It is an important means of enforcing the right of the person to possess a gun. Scalia, have we held that, what you just said? Has this Court held that? Do we have a case in this Court that says that? I think that's a – You can be liable for aiding and abetting a felony when you don't know that it's a felony? You don't have to know that the underlying conduct is illegal. Yes, that's right. I think that's the principle of the common law. I think you see that in the criminal law treatises, certainly. But 271B, I think, is Congress intended that to be available to enforce patent rights when it would be impracticable for patent holders to – to file suit directly against a direct infringer. So situations like the Grokster scenario where you have millions of direct infringers, you need to go after the person who is inducing that conduct. But to go back to Justice Ginsburg's point about why would it make sense to treat the two issues differently, I think there are three reasons that you would do so. The first is that even though, as Justice Kagan said, claim construction can be a common subsidiary issue in both non-infringement questions and invalidity issues, I don't think it's anomalous to still treat the two issues as separate. For instance, in Cheek v. United States, the Court – it's clear that in the statutory context, you might have a question about statutory construction that would be relevant to whether you're violating the statute. And that same question might be relevant to validity of the statute, but the Court still said that your belief that you – that the statute was invalid did not negate your standard with respect to whether you're violating the law. And I also think there are two – Roberts, you said a couple of times about the idea of the difficulty of going after all the little people. Why is that? It would seem to me that once you have a few successful suits against the users rather than the inducers, both the users and the inducer will get the message and not continue on with the infringement. Well, I'm not sure that that's always going to be the case as a practical matter. I think there may be situations in which, you know, the users may have – the direct users may have immunities. For instance, the Patent Act provides in the context of surgical materials that doctors can't be directly liable for infringement, so the only – the only course there is to go after the inducer. So I think that Congress anticipated in the Patent Act that inducement would be an independent means of imposing liability. But to go back to the two reasons that it may make sense as a policy matter to treat invalidity and non-infringement differently, I think one of them is that invalidity questions can be even harder and more complex to determine. I think it's important to keep in mind here that what we're saying is that the defendant would have a – he would be able to immunize himself from liability based on his good faith belief with respect to anticipation, whether there's prior art that may make it obvious to a person skilled in the art. Scalia, of course, that's not your position, is it? I mean, the United States would treat the both the same, right? That is our – The United States says you don't have to know either one. It doesn't matter. That is our frontline position, but we, of course, acknowledge that the Court may understand global tech differently than we do, and in that case, we think that there are – there are reasons to think that. Differences are not enough to persuade you, but you think they should be enough to persuade us. Isn't it? No, I think as a – I think our primary point is that it's not usually the case in the law that we require defendants to have knowledge that they will ultimately be held liable, that they have no good faith arguments about, you know, complex legal questions, technical factual questions, claim construction questions. That is not usually the way it works in the law, but even when a defendant may need knowledge that his conduct is illegal, it is not the case that a belief that the underlying legal duty is invalid would negate that scienter. What you just said does sound like an argument that global tech was wrong. Again, I don't think it is, Your Honor, because, again, even if you understand global tech to require knowledge of infringement, we think there are reasons to treat infringement differently. And I would go back to the statute here. If you assume that 271B requires knowledge with respect to the fact that the acts constitute infringement, infringement is defined in 271A. Infringement is defined as practicing the elements of the patent without authorization. The validity of the patent is not an element of the plaintiff's cause of action. So it is possible to establish infringement without establishing the validity of the patent. Scalia, You have infringed a non-patent, right? I mean, I guess you could say that. We have many cases that say you can't infringe an invalid patent. You've said that often. I think Congress made clear that infringement, that invalidity is something that prevents liability for infringement. It does not prevent infringement from occurring. Once the PTO has granted a patent, that patent exists and it can be infringed. 271A says that. Sotomayor There are two different burdens, aren't there, for infringement and for invalidity? Infringement, the patent owner bears the burden of proving that the other is infringing, and for invalidity, the other side bears the burden. So they are treated differently. That's correct. Roberts, briefly. I think 271A makes clear that because of the presumption of validity, infringement and invalidity are separate issues. The patentee does not have to prove validity in order to establish infringement. Thank you, counsel. Mr. Waxman. Mr. Chief Justice, and may it please the Court. As this Court explained in Grokster and in Global Tech, the linchpin of Sienter for inducement liability is knowledge that the induced acts, quote, violate the right of the patentee, because practicing an invalid patent violates no such right of a patentee. An accused inducer who reasonably believes in good faith that a patent is void lacks the Sienter required for liability under Section 271B. So what does that do to the presumption? If the presumption is that a patent is invalid until you prove you have the burden that a patent is valid, you have the burden to prove it's invalid. Your position basically says, no, I don't have to prove it. I just have to show I had a good faith basis. Well, no, no, no. In order to invalidate a patent in court, the party urging that the patent is invalid bears the burden of proving invalidity by clear and convincing evidence. That's actually not the burden if you challenge it before the PTO. But it is a high burden, and it's appropriately high, because once a patent is declared invalid, it is unenforceable against anybody for all time. And under principles of the Blonder-Tung principles, a patentee who loses once is gone. And this case, of course, and the issue in this case, only arises, as all specific intent cases arise, only where there is otherwise established a cause of action. So in other words, the good faith belief either that the patent wasn't being infringed by the direct infringers or was a void patent will arise only when a court or the PTO has concluded that the patent is indeed valid. And when — and the only issue in this case is, will — it is the plaintiff's duty, the plaintiff's burden to prove scienter. And as Arrow suggests and Global Tech affirms, if the plaintiff comes forward and says, I sent him a letter identifying the patent and expressing my belief that the patent is infringed, if the defendant doesn't have anything else to say, that can be viewed as permitting the jury to conclude that, in fact, the defendant had scienter. The only issue in this case is what the defendant can say in response to the scienter element, an element that does apply, as Justice Scalia was pointing out, at common law for aiding and abetting liability. And the jury will certainly be told, after the — Sotomayor, you're not aiding and abetting, you're — Waxman, I'm sorry? You're not aiding and abetting, you're inducing. So — You're — you're — actually, it's like I want — you're appointing a surrogate and you're saying, you do it for me, but you do it. Well, I want to get to my last point about what the jury will be instructed, but let me first, with all due respect, take on that assertion. When Congress enacted Section 271B and Section 271C in 1952, both the House report and the Senate report said two things about those provisions. Number one, that they were enacted to reflect common law principles of aiding and abetting liability, and that they were thus, quote, an expression of law and morals. And this Court in Global Tech precisely recognized that these provisions are, in fact, the modern-day statutory version of civil aiding and abetting. The Federal Circuit has always recognized it. And aiding and abetting at common law absolutely required knowledge of wrongdoing. And just to get to your original question, in a case in which the jury has found that the patent is valid and the plaintiff goes on to say, you know, and there was appropriate scienter because — and it's quite unlike this case because there was no letter — a letter was sent saying, I have this, the 395 patent, and here's why you infringe it. You've heard the defendant explain why he or she or it nonetheless had a reasonable good-faith belief that the patent was void. In evaluating the reasonableness and good faith of that expressed belief, you need to take into account that under the patent laws, patents, issued patents, are presumed valid, and that in order to establish the invalidity of a patent in court, as I have otherwise instructed you, the defendant has to prove invalidity by clear and convincing evidence. And that's what you should take into account when you are evaluating the defendant's profession of a good-faith belief. And if you — Sotomayor, I'm sorry. I was just going to — just going to Justice Kagan's point, the norm about, you know, the two sides of a coin or two different coins, whatever metaphor you want to use, what the — what happens in the paradigmatic case, and it actually happened in this case when the lawsuit was filed, is the defendant looks at the claim that it has a method that is violating this patent, and it may seek legal counsel. And what it found in this case, and what it would testify to if it were allowed, is we looked at these — at this patent. This patent seems to, by all intents and purposes, claim Bluetooth technology. And if the patent is construed narrowly as we think it should be, our customers are not practicing the steps. If — Roberts. Well, that seems to me to go to the application in your case. But to step back, if you regard patent as law, it seems to me that your position is really just ignorance of the law as an excuse. No, no, no. We are not at all, Mr. Chief Justice, we are not arguing at all for a freestanding defense of mistake of law. We're not arguing here — there was a reference to Cheek. We're not claiming that there is a reasonable good-faith defense in a belief that the patent laws are unconstitutional or that they don't imply — apply secondary liability, or even we don't — it wouldn't be a reasonable good-faith belief. No, but if the patent — you don't have to say the patent laws are unconstitutional, but if you regard the patent more as law rather than contract, and it does apply against the whole — confer legal rights against the whole world, and you say, well, even if we turn out to have been wrong about what that law means, what that patent means, we still have a valid defense. Well, what the law means and what a patent means are two very different things, and I think that really is the crux of what I should have started saying. There's no dispute that practicing all of the steps of a patented invention is unlawful, and a defense of a belief that it wasn't wouldn't be a defense. But invalidity defenses are not disputes about the parameters or the scope of the various issues that are there of Section 102 or 103 or 112. Invalidity defenses are utterly factual. Several of them, the Supreme — the Federal Circuit has said are purely factual, and the other ones that aren't are questions of law that depend — that are resolved completely by resolution of facts. And the government, in its brief at page 30, acknowledges and extols this. So a contention that there is a reasonable good faith that a patent is void is not arguing about the legality of anything. It argues about the force of the issued document. Kagan. I guess I'm not sure what you're saying. I mean, even take a typical contract case. Typical contract cases, somebody sues you for breach of contract, and you say, oh, I thought that the contract was invalid. It's true, I would have breached it if it were valid, but I thought the contract was invalid. That usually does not allow — that's not a good defense. I mean, if it turns out that the contract was invalid, you win. But if the contract was valid, you lose, even though you thought the contract was invalid. And so, too, here, it would seem to me. And that is exactly the rule that — I mean, contract breach is a — it's not a tort, but it's the analogy to a direct tort. It's analogous to the direct infringer. On the contrary, at common law, tortious interference required an act that was not only intentional but, quote, improper. And that's reflected in Section 766 of the First Restatement of Torts under tortious interference. And there are many, many courts have understood and construed that word improper to require a belief that the contract — that you were tortiously interfering with a contract that is, in fact, valid. And many courts have allowed the third party, the aider — essentially, aider and abetter — a defense that they believed that, you know, this was a contract for the supply of alcohol during prohibition. And juries have found a lack of scienter and a lack of third-party liability at common law for the absence of that belief. I mean, at common law — and this Court in the Court's Central Bank of Denver v. First Interstate Bank of Denver, which was a private securities action, has a long treatment of the history of civil aiding and abetting liability and underscores what the treatises reflect, which is that third-party liability for a non-culpable wrongful act was exceptionally rare. Ginsburg. But is — Ms. Panders made the point that in the patent context, it's the aider and abetter or the inducer is the mastermind, and then the aider and abetter is selling the allegedly infringing device to a lot of customers. And as between those two, it's much more effective to go after the person who is supplying the allegedly infringing device. Well, Justice Ginsburg, in some context it is, in some context it isn't. When, you know, Walmart or McDonald's get a letter from Commil saying that you are infringing our patent because you're using the, you know, Cisco-provided wide area network, a couple things happen. We're talking about the practicalities of things. In the first place, companies like Cisco, it is a commonplace to have an indemnification for customers saying if you're sued for patent infringement, we will take over the defense and we are liable. And even if they don't have that, it obviously is going to do a company like Cisco or, heaven forbid, a smaller, you know, innovative company to say, well, you know, they can't really reach us, they're just suing our customers. And in practice, what sometimes happens, even in the absence of an indemnification agreement, is the manufacturer, whether it's Cisco or Apple or whoever, will intervene in the action or file an individual deck action to take on the very question. And so in the real world of litigation, this issue is resolved. Now, on the Chief Justice's question about how valid are patents, I mean, the real answer is that statistics have changed over time. At page 49 of our brief, we cite a 1998 study that showed that patents were invalidated 46 percent of the time. In 2002, a study was done of Federal Circuit decisions between 2003 and 2009 and found that patents, challenged patents, were invalidated 60 percent of the time. And I do think that in light of this Court's explication of the bounds of certain validity principles in Alice Corp. as to business method patents, Nautilus as to indefiniteness, Mayo as to patentable subject matter, KSR as to obviousness, there's no question that that number is going to go up. Kagan. Well, but that might be a very good reason for Congress to take a new look at this presumption of validity. But your problem is that this presumption of validity exists, and that this question of validity functions in a patent suit only as an affirmative defense. So I don't – I – maybe I'm seeing this wrong, but I don't actually see the presumption of validity as a problem. The presumption of the validity raises the bar of proving to a jury that you had a reasonable good faith belief that this patent would be invalidated. You have to have – it wouldn't be reasonable to assume, oh, I think I can prove by 51 percent that it's invalid, or I think it's 51 percent likely. The reasonableness and good faith of your profession has to be evaluated against the high bar that you will face in court. And the flip side of the coin is, so one of these letters comes in, and Cisco – I mean, we've seen the government statistics are 60 to 100,000 of these letters a year. Cisco gets way more than one letter every day. I mean, they're sued twice a year. Every time they get a letter, according to the government and according to Camille, what they are supposed to do is shut down the production line, tell all of the customers who've bought their technology, oh, no, no, the patent is presumed valid, you should stop, otherwise you'll be infringing. While they do what they did, which is to file an action in the PTO to seek a declaration of invalidity. Roberts. That's only a problem if you turn out to be wrong. Exactly. Right? And so why shouldn't you bear that risk? Why do you require the patent holder to lose the value of his patent until you get around to deciding the validity or the infringement suit is solved? So I think a couple of answers. First of all, it is not the case — I mean, you could establish an a priori rule that says since all we're talking about here is retrospective damages looking back from the adjudication of invalidity and that the direct infringers are practicing all of the steps. And the question just is who bears the burden of that, of those retrospective damages, where the common law put it under aiding and abetting liability, and where 271B and 271C put it, as this Court has explained in Grokster and in Global Tech, is to leave it for the jury. The jury is told this entity is accused of inducing infringement or contributory infringement, and you therefore need to find, in the first instance, that some entity was, in fact, could be, quote, immersed as a direct infringer, to quote this Court's opinion in Arrow. If you do that, aiding and abetting liability will follow if the plaintiff establishes three separate tests, one of which is C-enter. And the jury will then you need to evaluate whether, in fact, the plaintiff has established C-enter. If the plaintiff establishes C-enter, then the alleged inducer is an adjudicated inducer and is, in fact, responsible for all of those damages. Sotomayor, I still don't understand. I mean, you posit that you know that your steps, if the patent is valid, infringe. I'm sorry. You know, for inducement, you have to prove that the person knows that they are infringing. The next question is, are they liable for it, and that issue has to do with validity. A second question. So I don't know why the patent owner has to suffer the loss of royalties to your gamble that the patent is void, because presumably they've proven that you knew your steps infringed. So you knew that, at least on the terms of the patent as it exists, you violated it. I have a doctrinal — my answer has a doctrinal portion and a practical real-world portion. The doctrinal portion is simply the statement that was made by somebody on the bench. And I'll just quote Justice Black in his dissenting opinion in Exhibit Supply, which began with a statement that was agreed — was started as common ground, where he said there can be no infringement of a void patent. And if you — and there are — Ginsburg, may I stop you at that point and ask, how does that compare with what Charles Rich said, which is, and I think this is in the government brief and I'm sure that you know it, assertion that invalid claims can't be infringed is a nonsense statement. What do you suppose he meant by that? Waxman. Okay. First of all, Charles Rich, Judge Rich, Chief Judge Rich, held for the Court in Richdell, which was decided in 1983 at the very outset of the Federal Circuit's creation, this was the holding of Richdell, that if a claim is invalid, there is nothing to be infringed. What he meant — what he meant when he made the statement that you've quoted was accurate in the very peculiar context of that case, because in that case there was, in fact, a claim of invalidity under best mode, and there was a claim that the steps of the method or the combination were not being practiced. But because of an — may I just — You're making this case specific, but he also said, courts constantly hold claims infringed, but invalid. So what that means is, if I can just finish my point on the case that he was deciding and what it made — why it made sense, for a — because of a reason of the quirk of the case, the best mode defense of invalidity was not presented to the jury. And he was simply saying that it was wrong to say that by having found the question of whether all the steps were practiced, or in that case not, he necessarily — the jury necessarily made a finding on invalidity. What the more general statement, Justice Ginsburg, reflects is the fact that infringement can be referred to — I mean, there are, as was pointed out, separate defenses. One is the first in 271A, or 282A, the first — A1, is you're not practicing all of the steps of the claimed invention. And that is vernacularly referred to as non-infringement. The claim that a patent is valid depends on a — or invalid depends on a showing that it doesn't satisfy sections 102, 103, or 112 of the Patent Act and is a — is a showing that, if made, will invalidate the patent against everybody, not just the defendant. Ginsburg. I thought, and maybe correct me if I'm wrong, that what this meant was, thinking of how it comes up in litigation. So you're in the district court, and you have — let's say you're the alleged infringer or contributory infringer or inducer. So you say, number one, the patent is invalid, and number two, if it's valid, it was not infringed. So in the — in the quarter first instance, both of those issues, they're discreet in the sense that I — they — I am arguing it's not valid, so no patent can be made out of it. But if I'm wrong about that, it wasn't infringed. So those are discrete inquiries. Waxman. There's — we're not disputing that they're discrete inquiries. The validity of the — a finding of infringement, the ability to, as this Court put it in Arrow 1, immerse a defendant as an infringer, presupposes that there is, in fact, someone is practicing all the steps of a valid patent. That is — that's indisputable. It's simply — it is a nonsense statement to say that you can be immersed as an infringer of a void patent. The patent provides rights, the rights to exclude, the right to withhold authorization within the meaning of 271A, defining infringement. If you have no ability, no legal right to withhold authorization, you don't have a legal right that's being violated if somebody practices the claimed steps. Now, I do want to make a couple of points. Well, first I should go back to the — let me try to remember my practical side of just the answer to Justice Sotomayor's question. I wish I could remember it, because it was really good. Maybe I'll — maybe I'll — maybe it'll probably come to me. Sotomayor, your answer was really good, or my question? No, no, your question was good, but my answer was also good, and it'll probably come to me on the walk back to my office. I have forgotten the question. What was the question? So I think the question was — well, what was the question? Mr. Waxman, as a company that's in this position, the company has other alternatives. It can go to court and seek a declaratory judgment. It can go to the PTAB. It can go to the PTO. It can do all of these things essentially to figure out whether the patent is valid, and those things also have the side benefit of getting invalid patents struck so that nobody else will have to deal with them either. So why isn't that the right way to understand this system is that, no, rather than allow a company to come in and do what we don't allow in any other context, as far as I can see, which is to plead good-faith belief in the invalidity of the patent, that, no, we say to them, yes, we understand you have a question. Congress has set up many mechanisms for you to get an answer to that question. Use one of those mechanisms. Okay. So, I mean, look, I'm — our argument isn't principally a policy argument, but I'll give you the policy answer to your question. The legal answer is that 271B and C liability is avowedly and recognized as a statutory instantiation of civil aiding and abetting liability, and third-party liability at common law was a rarity and a particular rarity in the absence of culpability. But as to your question, so Cisco is a big company and has a lot of resources. It's true that it gets hundreds or thousands of these letters every year. And if the notion that it should run into court and institute an action every time somebody with a business method patent that seems now pretty clearly invalid under this Court's decision in Alice has to begin patent litigation and stop — stop the I think would be an odd practical remedy. The question here is, what about a company that's perhaps a less — that's let — Cisco 20 years ago? You know, an innovative company that is making products that people can use. It gets a letter, and it looks at this letter and says, gee, you know, if the patent is construed the way we think it should be construed, we don't think our customers are violating it, and if it's construed broadly, it's probably void because of X, Y, or Z. If we go to court, first of all, we will have to shut down our only means of — you know, we have to shut down our production line. We have to tell our customers to stop using it. And we get to go to court and litigate what probably will be a $1 million to $10 million case, which, if we don't shut our production line, we will be retrospectively liable for all the damages that occurred. And the paradigm of what happens here is — again, this is getting back to a point that I do remember that you made, which is the two sides of the coin. What the lower court held — what the trial court held was that under Global Tech, it had to allow Cisco in — on the issue of Sienta to explain why it had a good-faith belief that the patent was not infringed. But it was not allowed to explain why, if the — all the steps — if the claim — if the patent were construed so as to encompass what Cisco does, it would be invalid for lack of enablement or written description, and — which is exactly what happened. And so the defense that Cisco was allowed to make at trial was the sound of one-hand clapping, whereas what Cisco did, once it received notice of the suit, was to do an analysis and say, this appears to claim only Bluetooth, we don't do Bluetooth, so our customers are not practicing the steps, but if this were construed broadly enough to include the protocols that we are involved in, it would be anticipated. And in any event, there's no enablement or written description of how to do it. Sotomayor, if you have a good-faith belief, you've done the inquiry, the one that Justice Kennedy talked about, that was the premise of Global Tech, which is there's a valid patent out there, you have to give a reason why your steps don't infringe their steps. If you — if you can do that, that's fine. If you can't, if — once you've done — you've lost on that, then you've rolled the dice. Why should the patent owner now be deprived of the value of that? Justice Sotomayor, you are rolling the dice no matter what, because if you can't convince — you need to be able to convince a jury that notwithstanding the — whatever proof the plaintiff has that you were on notice of the patent and a claim of infringement, that your scienter, which, after all, is measured by what you believe, not by what the other side tells you to believe, you are — if the jury can only evaluate half of the thought process of the defendant, the defendant says if it's narrowly construed, the steps aren't practiced, if it's broadly construed, it's invalid, but when you get to the jury, the only thing you're allowed to tell the jury is, well, I believe that if it was narrowly construed, we wouldn't be practicing this. That's not a real — that's not giving the jury the benefit of what you believed. And again, all this case is about, it's not about immunizing anything. It's about what the jury will hear if the defendant has anything to say about its scienter in response to a prima facie showing by the plaintiff that the defendant knew of the patent and that the patent was being infringed. And this is — we have no question, right, that validity or invalidity is an affirmative defense? Correct. Correct? I mean, is there any other area of law where the defendant gets to say, I thought an affirmative defense would be available? Turned out I was wrong, but I thought an affirmative defense would be available. Oh, I think if you — may I — quickly? Any of the common law — any of the — if you go back to the common law and look at instances where aiding and abetting liability, which, as this Court pointed out, is referenced in 876B of the first restatement, that defense was available, because someone who didn't have that belief was not culpable and, quote, morally wrong. Thank you. Thank you, counsel. Mr. Warby, you have four minutes left. Thank you, Mr. Chief Justice. Justice Kagan, to your question just now, I know of no other area of the law where a defendant, if it turns out they're right, they win, and if it turns out they're wrong, they win. That's the position that SISCO is seeking. And the parade of horribles, of having to shut down the factory — Your argument goes too far, because that's the same for infringement. If you don't think you're infringing and you have a good-faith basis, you're right. Well, there is the — in my mind, the fact is, is that SISCO and their amici press Congress to create, through the PTO, the IPR procedures. It's not a million-dollar lawsuit, and it's not one that goes on forever. They have many lawyers that can evaluate the risk and go to the PTO. That's where they should go if they're seeking validity. Infringement, you can't go to the PTO. But the IPR allows that. Of course, your response to the assertion that your argument goes too far is, well, we don't agree that it applies to whether you've infringed, right? I mean, your argument is even the question of infringement, despite what we said in Global Tech, that is not a defense either, right? So at least you're consistent. Well, Justice Scalia, I do want to point out that SISCO cannot point to a single statutory provision that suggests that Congress thought that the validity of the patent was an element of 271B. So no matter how the Court comes out on the non-infringement, see Enter and the Global Tech, regardless, our position doesn't depend on it. And there's no statutory support for validity being a component of a 271B. And the reference was to Blondertongue. That case that this Court decided back in, I think, the early 70s said that a jury finding or a judge that a patent is invalid doesn't wipe it out. It's not — it doesn't become void or canceled. It's a matter of collateral estoppel that has to be pled under Rule 8c. And if a defendant later does not, then that patent was infringing an invalid patent, because it's an affirmative defense. So I think the Blondertongue case really completely undermines the position that that infringement presupposes validity. It's quite separate, it's quite distinct, and for the reasons we stated, we would ask that the case be reversed and remanded to the Federal Circuit, unless there are questions. Thank you. Thank you, counsel. The case is submitted.